HENRY WALTERS

*v.*

KATIE WALTERS *et al.*

*Filed at Springfield March 31, 1890.*

1. STATUTE OF FRAUDS—*how availed of.* In the absence of any plea of the Statute of Frauds, or of its being set up in defense, a verbal contract for the sale of land may be enforced upon proof of performance by the party seeking relief.

2. SPECIFIC PERFORMANCE—*party seeking relief must not be in default.* The general rule is, that to entitle a party to a specific performance, he must show that he has been in no default in having performed his part of the agreement, and that he has taken all proper steps toward the performance on his part. The obligation in this respect rests as well upon the heir as upon the ancestor.

3. By a verbal contract between a father and son, the latter was to have a home on the farm of the former, and a support therefrom for himself and family during the father's life, and was to have the farm

itself, and a certain sum of money, at his father's death, in consideration of the son remaining on the farm, managing and cultivating it, surrendering the proceeds of it to his father during the life of the latter, and permitting his father and mother to have a home thereon and their support therefrom as long as they should live, and in further consideration of the son paying $200 to each of his three brothers at his father's death. The son, eleven years after, died, leaving a widow and children and his father and mother surviving. The widow and heirs filed a bill for a specific performance, without offering to perform the contract or showing that performance was prevented : *Held*, that the father was in no default, and that the complainants were not entitled to a deed until the death of the father, and not then without performance of the contract to keep the father and mother, and to pay $200 to each of the three brothers.

4. SAME—*decree must conform to contract—appointing a trustee— whether authorized.* By the terms of a contract between a father and his son, the son, in consideration of services, was to have the father's farm on his death, and the son was to support his family and his father and mother out of the proceeds of the farm, and pay over all the surplus to the father during his life. Before full performance the son died, and on bill for specific performance, by the son's widow and heirs, setting forth the contract, the court appointed a trustee to take charge of and manage the farm, and keep and dispose of the rents and proceeds, until the father's death : *Held*, that the decree appointing the trustee was not authorized by the contract stated in the bill, as it burdened the father's land with the compensation of the trustee.

5. SAME—*passing title—not from the operation of the decree itself, but by conveyance.* It is error, on a bill for the specific performance of a contract to convey land, to decree that on the happening of a future event, as, the death of the vendor, and the payment of a certain sum of money, the title in fee to the land shall, by virtue of the decree, vest in the heirs of the purchaser. Such a decree assumes to pass the legal title without a conveyance, and stops beforehand the operation of the Statute of Descents.

6. Upon the death of the vendor the legal title to his land will descend to his heirs, and the heirs of the purchaser, if then entitled to the fee, will be bound to commence a suit against the vendor's heirs, and obtain a decree that they convey in a certain time, or, in default thereof, that a commissioner convey.

7. SAME—*allegations and decree — should correspond.* In the same case the decree found that under the contract the father was to take all of the proceeds of the grain and stock raised on the farm, to pay off what he owed thereon, except what was necessary for the expenses of cultivating the land and supporting the two families, and that the son cultivated and labored on the farm, and paid over its proceeds, for

about eleven years, when he died, and that the whole of the debts of the defendant on the premises were therefore fully paid off. There was not a word in the contract, as set up in the bill, about any debts of the father on the land, or their payment : *Held*, that such finding was not authorized by the pleadings.

8. The contract, as shown in the bill, was, that the son was to pay $200 to each of his three brothers at his father's death, while the decree found the contract to have been that he was to pay $200 to each of *two* brothers : *Held*, that such finding was not proper, under the bill. One case can not be made by the bill, and relief granted on another and different case made by the proofs.

9. The decree in the case was based on the theory that the son had virtually paid for the farm at his death, because his labor and services for ten years were worth as much as the farm, while the contract was that he should cultivate the farm and support his father thereon, and yield him the proceeds thereof, as long as his father lived, without reference to the value of the farm or the value of his labor and services: *Held*, that the decree in this regard was not supported by the pleadings.

10. PARTIES—*to bill for specific performance.* On bill to enforce the specific performance of a contract by a father to convey land to his son in consideration of certain services to be rendered by the latter, and upon the payment of $200 to each of his three brothers at the father's death, and by which contract the father agreed to pay, at his death, a certain sum of money to apply as purchase money, upon the death of the son, on bill filed by his widow and heirs, the administrator of the estate of the deceased son, and his three brothers, are necessary parties to the bill, and it is error to adjudicate on their rights without making them parties.

11. EQUITABLE TITLE—*whether it arises—upon a conditional contract to convey.* A mere contract to convey land at a future time, upon the performance of certain acts by the purchaser, does not create an equitable title in him. When the purchaser performs all acts necessary to entitle him to a deed, then, and not till then, has he an equitable title.

12. DOWER—*in land bargained for by husband.* Where there is a contract to purchase, and the purchaser has not paid the entire purchase money in his lifetime, and so has not become invested with an equitable fee, no right of dower attaches at his death. When the land is to be paid for in services, they must be treated as purchase money, and must be performed to invest the purchaser with the equitable title.

13. DEFAULT—*prematurely taken.* After taking a rule on a defendant to answer an amended bill by a day named, it is irregular and erroneous to take his default before the expiration of the rule, especially when the record fails to show what the amendment was, or that any was ever made.

14. SAME—*decree must follow the bill.* Where a bill taken for confessed fails to show a right to the relief given by the decree, the decree will be reversed.

15. DEPOSITION—*notice of the taking.* The master in chancery, in the caption to depositions, recited that they were taken in pursuance of an order entered on a day mentioned, referring the cause to him to take proof, but the record failed to show any such reference was made or notice given the opposite party: *Held,* that the record failed to show the right to take the depositions.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. N. W. GREEN, Judge, presiding.

This is a bill filed by the defendants in error, the widow and children of Charles Walters, deceased, in the Circuit Court of Tazewell County, on August 31, 1888, against the plaintiff in error, Henry Walters, father of said Charles Walters, for the purpose of enforcing a verbal contract alleged to have been made between plaintiff in error and his deceased son, Charles, in 1877, for the sale by the former to the latter of an improved farm in said county. The administrator of the estate of Charles Walters is not a party to the suit, though the two children, who are both minors, sue by him as their next friend.

The bill alleges that in 1877 Henry Walters, his wife concurring, proposed to Charles that if he would stay and make his home upon the farm and cultivate it and carry it on, he should have the possession, control and management of it; that Henry and his wife would live with him thereon while they respectively did live; that all the expenses of Henry and wife and of Charles and his family, "should he get married and have a family," should be paid from the proceeds of the farm from year to year while Henry and wife should live; that from such proceeds Henry should pay to Charles annually the sum of $200.00, "which should stand as a credit annually to said Charles until the death of said Henry, and then be paid by the estate of Henry to Charles or his legal representatives;" "and at the death of said Henry, it was agreed and stipulated

by and between said Henry and Charles, that in consideration of said Charles so remaining and laboring on said premises and surrendering to Henry the proceeds of said farm from thence during the life of said Henry, * * * Charles should from thenceforth have the said premises as his own property in fee subject only to the rights of his mother * * * who was to have her home and support from said premises while she continued to live, and on Charles paying to each of the other three sons of said Henry and wife the sum of $200.00 at and after the death of said Henry;" that, in consideration of said agreement, Charles went into possession in March, 1877, and cultivated the farm, and saved and sold the proceeds, and, after paying the necessary expenses of the two families, paid over all of said proceeds to Henry; that Charles died on April 20, 1887, leaving the complainants his widow and children; that Charles was married to complainant Katie Walters in 1882, and she went to live with him on the premises and assisted him in cultivating it until his death "without other compensation paid or to be paid her other than her rights and interest provided by law for her as a homestead and dower right in and to said premises so possessed and so to be the property in fee of Charles on the death of said Henry as aforesaid," and that she has continued to remain on the farm and cultivate it since her husband's death; that "Charles so worked and managed said premises before his death ten years and became thereof entitled to the sum of $2000.00 from Henry to be paid as aforesaid from the property and estate of said Henry;" that the wife of Henry and her sons abuse complainant and her children and try to drive them from the place, and that Henry, though not hostile to them, is old and under the influence of his wife and sons and they threaten to have Henry convey the land to one of the sons so as to deprive complainants of their rights; that the farm in 1877 was worth $5000.00; that Charles, in his life, and Katie, since his death, by their labor and cultivation and payments from year to year "paid

to Henry to be credited to him and since his death to Katie and the children $3120.00 principal and interest thereon leaving unpaid only thereon $1880.00 of the value of said purchase money of said premises had it been there purchased for cash;" that Henry and wife threaten to convey and sell said premises to one of said sons; that Henry has no other property except said land with which complainant could be compensated if he should sell said land; that after the death of Charles Henry declared that he had received $2000.00 from Charles and desired his heirs to pay it to complainants and that he would pay them annually $120.00 as interest on said sum beginning on September 1, 1888, but now denies the contract and refuses to pay said interest.

The prayer of the bill is that Henry be required on payment of said residue of $600.00, still due him in payment on said land, to convey the same to some person in trust for the benefit of the widow and children of Charles or to be disposed of for their benefit and to raise said sum still due thereon, now tendered herewith by complainants to defendant in completion of the payment thereof, or that the defendant, should the court on the proof in equity be unable to cause said conveyance to be made, be required to pay to and for said complainants the whole of the sum so received from Charles in his life and from Katie since his death and interest thereon, or secure the same on said premises for their use and benefit "and order that on the death of said Henry Walters and payment aforesaid the title in fee vest in said heirs and widow of said Charles Walters," etc.

The decree entered by the court contains this recital: "the court not being fully advised and satisfied in the premises having heard the testimony in relation thereto in open court, and caused the same to be taken and filed in said cause by the master in chancery herein." The testimony so taken by the master was taken by and on behalf of the complainants and consists of the depositions of Kingman, the administrator of

Charles Walters, and Katie Walters, his widow. So much of the testimony as is necessary to understand the points involved is referred to in the opinion.

The following are the material portions of the decree : the court finds that in 1876 said defendant, in consideration that said Charles Walters, his son, then over twenty-one years of age, would stay at home and labor on said farm from thenceforth, and allow the said Henry Walters to take all of the proceeds of the grain and stock raised on said premises to pay off what he, said defendant, then owed thereon, except what might be necessary to pay necessary expenses of the cultivation and managing said farm, and to support said defendant and his wife thereon, and said Charles and his family, should he have one, thereon, and at the death of said Henry Walters pay to Christian and Henry Walters, other sons of said defendant, Henry Walters, each the sum of $200, that the said Charles Walters might have the said farm and stock, and implements which might be on said farm, at the death of said defendant, in fee, and that the said Charles then accepted said proposition of said defendant, and so purchased and took said farm to be so paid for, and so labored thereon and cultivated the same from thenceforth, paying and giving to said defendant all of the proceeds of his labor and products of said farm not necessarily used in support of said defendant and his family, and said Charles and his family, until the death of said Charles, which occurred on the 12th of April, 1887 ; that said Charles, after his agreement of purchase, so cultivated and labored on said premises, and so paid over the proceeds thereof to said Henry Walters, for a period of about eleven years, when he died, and that the whole of the debts of said defendant on said premises were therefore fully paid off ; and the said stock and produce thereon remaining at the death of said Charles amounted to $2000, all of which arose from the care and labor of said Charles under said contract of purchase, and all of which, and the proceeds thereof, were, at the

death of said defendant, to be the absolute property of said Charles; that when said Charles purchased said premises the same were then worth the sum of $4000, and that at his death, by reason of his labor and improvement thereof, the same were worth the sum of $7000; that the equitable right and title in and to said premises is in said heirs of Charles Walters, subject to the dower of said Katie therein, and all subject to the homestead right therein of said Henry Walters and his wife, during their joint lives, and that of the survivor of them, and to the dower right in such parts thereof, not included in the homestead, as may by statute inure to the wife of said defendant, should she survive him, and subject to their necessary support on said premises until homestead and dower may be attached to them therein, and also subject to the lien of $200 each, to be paid, at the death of said defendant, to Christian and Henry Walters; and on payment of said $200 each to said Christian and Henry Walters, said property was to belong to said Charles. And the court doth order and decree, that on the death of Henry Walters, and the payment of said sums to said Christian and Henry Walters, ($200 each,) title and fee of said premises shall, by virtue hereof, vest in said heirs of Charles Walters, and the absolute property in the farm, stock and implements, produce of said farm, shall vest in the representatives of said Charles, all subject to the homestead, dower, and other legal rights of said Katie, his widow, herein; and in the meantime, and until the death of said Henry Walters and his wife, they have and retain the right of homestead in and upon said premises, and that they be paid, annually, sufficient of the annual proceeds or products of said property and premises for their mutual and reasonable support therein. And it is ordered, that said Katie and said heirs of Charles Walters be permitted, in the meantime, to occupy and enjoy a homestead, and reasonable support from the proceeds of said farm and property, on said premises, if sufficient shall be ob-

tained therefrom, after supporting said Henry and wife, to support said heirs of Charles therefrom.

And it is ordered, that Augustus Kingman, on entering into bond in the sum of $1000, to be approved by the clerk of the circuit court, be and he is hereby appointed trustee, to take charge and custody of said farm and property, and manage and keep and dispose of the rents and proceeds of said farm, or of such reasonable parts of the stock that is or may accumulate on said premises, until the death of said defendant and of his wife; and that said trustee, on the death of said defendant, immediately dispose of so much of the stock and proceeds of the rents and profits of said farm as may be necessary to raise the said sum of $400, and that he pay to said Christian Walters $200 thereof, and to said Henry Walters $200 thereof, and report his proceedings, from time to time, to this court for its approval; and out of the proceeds of said premises and property, above named, he pay the costs of this proceeding, and pay the solicitor in this cause the sum of $100 as his reasonable solicitor's fee allowed in this cause by the court herein, etc.

Mr. A. B. SAWYER, and Mr. WILLIAM DON MAUS, for the plaintiff in error:

He who seeks equity must do equity. (1 Story's Eq. Jur. sec. 642.) This being a bill for specific performance, even the default of the defendant therein will not excuse a due regard to this principle.

If the farm of the father was to become the property of the son at the father's decease, in return for the continued labor of the son for the father as long as the latter should live, then there is no averment in the bill that the labor had been performed, or excuse for its non-performance, or offer to complete the labor so promised. The death of the son did not excuse him from the further promise of the alleged agreement.

The relief decreed is not warranted upon the facts found in the decree, or upon the allegations and prayer of the bill.

Every averment necessary to entitle the complainants to relief must be contained in the stating part of the bill, and if every necessary fact is not distinctly and expressly averred, the defects can not be supplied by inference from other parts of the bill, (*Smith* v. *Brittenham,* 98 Ill. 188,) or from proofs of facts, not averred in the bill. *Marvin* v. *Collins,* 98 Ill. 510.

The bill is wanting in the necessary statement of facts to excuse the complainants from not performing or offering to perform the necessary labor on the farm, and also to turn over the proceeds of the farm, with the exceptions above noted, to the father, so long as he shall live.

The bill makes no averment whatever that any part of the proceeds of the farm, or personal property thereon, is, or ever was to be, the property of the son or of his representatives, and every inference must be taken most strongly against the pleader. Relief not sought by the bill should not be decreed.

Mr. B. S. PRETTYMAN, for the defendants in error:

The estate, in equity, vested by the intention of the parties, and the vendee took actual possession and control of the premises, and was to perform the acts contemplated after taking possession. This made it a condition subsequent, and equity will relieve against conditions subsequent in support of the estate vested. *Rogers* v. *Walker,* 1 Wis. 527.

When a condition applies, in terms, to the grantee, without mention of heirs, executors or assigns, the condition can not be broken after the death of the grantee. *Emerson* v. *Simson,* 43 N. W. 475; *Merrill* v. *Emery,* 10 Pick. 507; *Voris* v. *Renshaw,* 49 Ill. 432.

If a condition subsequent becomes impossible of performance by act of God, it leaves the estate an absolute and unconditional one, as it is the condition itself that is void. See 1 Washburn on Real Prop. chap. 14, secs. 5, 18, p. 454.

A decree *pro confesso* concludes the party, to the extent of the averments in the bill. *Gault* v. *Hoagland,* 25 Ill. 266;

*Mansfield* v. *Hoagland,* 46 id. 359; *Hannas* v. *Hannas,* 110 id. 64.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

In the present case the defendant below filed no answer. Default was entered against him. One of the questions arising upon the assignments of error is whether the bill states such a case as justifies the decree entered in the cause. (*Perkins* v. *Hadsell,* 50 Ill. 216; *Smith* v. *Brittenham,* 98 id. 188.)

It may be admitted, as it seems to be assumed by both parties, that, in the absence of any plea of the statute of frauds, the verbal agreement set up in the bill could be enforced in favor of Charles Walters or his heirs, if he or they had performed his part of such agreement.

Omitting the other provisions of the contract and passing over its details, we may state its substance in brief as follows: Charles was to have a home on the farm and support therefrom for himself and family during his father's life, and was to have the farm itself and a certain amount of money at the death of his father, in consideration of his staying on the farm and managing and cultivating it and surrendering the proceeds of it to his father during the latter's life, and permitting his father and mother to make their home thereon and have their support therefrom, as long as they each should live, and in further consideration of his paying $200.00 to each of his three brothers at his father's death.

As Charles died in April, 1887, and as his father and mother are still alive, it is manifest that he did not perform his part of the contract. It is true that death rendered it impossible for him to accomplish such performance, but it is equally true that his father has not received from him the management and cultivation of the farm, nor the surrender to himself of its proceeds, for the length of time agreed upon. The plaintiff in error is in no default. By the terms of the agreement, he was to do nothing in his lifetime either in the way of paying money,

or giving up the farm. The money was not to be paid, and the farm was not to pass to his son, until after his own death, which has not yet occurred.

If this agreement is not one, which has its basis exclusively in the love and affection existing between the father and son and in the desire of the former to have the society as well as the services of the latter; in other words, if the things to be done by Charles were not personal to him, but are such as can as well be done since his death by other parties, then it is to be noted that the complainants below, the widow and heirs of Charles, do not offer in their bill to perform for the deceased his unfulfilled part of the agreement; and this is true notwithstanding the allegation of the bill, that the widow worked in the field and otherwise labored on the farm with her husband in his lifetime, and since his death has continued to cultivate the land and "to carry on said farm and work in the field in raising the crops raised in the years 1887 and 1888." The general rule is, that, to entitle a party to specific performance, he must show that he has been in no default in having performed his part of the agreement, and that he has taken all proper steps towards the performance on his part. The obligation in this regard rests as well upon the heir as upon the ancestor. (*Walker* v. *Douglas*, 70 Ill. 445; *Cronk* v. *Trumble*, 66 id. 428.)

The charge made against the plaintiff in error is, that he is under the influence of his wife and his living sons, and that these latter may induce him to sell or convey the farm. If the danger of such sale or conveyance constituted sufficient reason for furnishing relief to the defendants in error, such relief could be secured by enjoining the sale or conveyance of the farm. The decree in this case, however, does not stop at a simple injunction; it takes the property of plaintiff in error out of his hands and puts it in the hands of a trustee or receiver. By the terms of the contract with his son, as set up in the bill, all the proceeds of the farm were to be surrendered

to him during his lifetime ; by the terms of the decree entered herein, the trustee appointed by the court is to take charge and custody of the farm and keep and dispose of the rents and proceeds until the death of plaintiff in error and his wife, and plaintiff in error and his wife are only to be paid out of such proceeds so much as may be necessary for their reasonable support. The trustee cannot afford to manage the farm and perform the other services specified in the decree without being paid therefor, and thus the property of plaintiff in error is burdened with the compensation of an outside party acting as manager, besides being made to support the widow and children of his son, in addition to the support of himself and his wife. We do not think that the case as made by the bill justified that portion of the decree which placed the farm in the hands of a trustee.

The decree finds that, under the contract, the defendant below was to take all of the proceeds of the grain and stock raised on the farm to pay off what he then owed thereon, except what might be necessary for the expenses of cultivating the land and supporting the two families, and that Charles cultivated and labored on the farm and paid over its proceeds for about eleven years "when he died, and that the whole of the debts of said defendant on said premises were therefore fully paid off." There is not one word in the contract, as set up in the bill, about the debts of defendant, nor any allegation therein that any such debts existed, or that they were paid off. Nor is there anything in the testimony appearing in the record about the existence or payment of such debts.

The contract, alleged in the bill, states that Charles was to pay $200.00 to each of his *three* brothers at his father's death ; the decree finds the contract to have been that he was to pay $200.00 to each of *two* brothers. The only evidence to sustain the finding of the decree is the testimony of one Kingman, who says he heard Henry Walters say at one time that the sons except Fred were to get $200.00 each at his death—and of

Katie Walters, the widow of Charles, who says that her husband was to pay "$200.00 to Henry and Christ" at his father's ·death. "The decree must be confined to the pleadings. One case cannot be made by the bill and relief granted on another and different case made by the proofs." (*Marvin* v. *Collins*, ·98 Ill. 510).

The decree finds that the stock and produce on the farm at the death of Charles amounted to $2000.00, "all of which arose from the care and labor of Charles under said contract," and that in 1877 the premises were worth $4000.00, but, at the death of Charles, "by reason of his labor and improvement thereof, the same were worth $7000.00." There is no allegation in the bill that corresponds with this finding, and nothing in the proofs to justify it. It would appear from the testimony that all the proceeds of the farm were not applied in its improvement, as one of the witnesses says that "he (Charles) and his wife did the most of the farm work and the proceeds were applied on the payment of some land they had bought." Kingman does say that the *land* was worth $4000.00 in 1877, and that its value in 1888 was $7000.00, but there is nothing to indicate that this difference was due to any other cause than the natural increase in value which would be apt to take place ·during a period of ten or twelve years.

The decree seems to proceed upon the theory, that Charles had virtually paid for the farm at his death because his labor and services for ten years were worth as much as the farm was worth. But the contract was that he should cultivate the farm, ·and support his father thereon, and yield him the proceeds thereof as long as his father lived, without reference to the ·value of the farm, or the value of his labor and services, or the ·value of the one as compared with that of the other. In this ·regard the decree is not confined to the pleadings, and is not warranted either by the pleadings, or the proofs.

By the decree the court below also found "that the equitable right and title in and to said premises is in said heirs of Charles

Walters subject to the dower of said Katie therein." This find-ing is erroneous in two particulars. In the first place, when Charles died he did not own the equitable title in the premises because his contract had not been performed. A mere con-tract to convey at a future time, upon the performance of cer-tain acts by the purchaser, does not create an equitable title. "It is but an agreement that may ripen into an equitable title. When the purchaser performs all acts necessary to entitle him to a deed, then, and not till then, he has an equitable title and may compel a conveyance." (*Chappell* v. *McKnight,* 108 Ill. 570). In the second place, the widow of Charles was not en-titled to dower in the premises because her husband's interest therein had not ripened into an equitable estate. Where there is a contract to purchase, and the purchaser has not paid the entire purchase money in his lifetime, and, so, has not become invested with an equitable fee, no right to dower attaches at his death. (*Greenbaum* v. *Austrian,* 70 Ill. 591.) Here, the services agreed to be performed by the son are to be regarded the same as purchase money, and such services unperformed must be treated as purchase money unpaid.

This decree is erroneous in still another respect. It orders and decrees, "that, on the death of Henry Walters and the pay-ment of said sums * * * of $200.00 each, title in fee of said premises shall by virtue hereof vest in said heirs of Charles," etc. By thus decreeing in advance that at a future time the title in fee shall vest by virtue of the decree itself, the court has not only assumed to pass the legal title without the inter-vention of conveyances, but has stopped beforehand the opera-tion of the statute of descents. Upon the death of plaintiff in error the legal title to his farm would descend to his heirs. The defendants in error, if entitled to the fee, would be bound to commence a proceeding against such heirs and obtain a decree that they convey within a certain time, or, in default of such conveyance, that a commissioner convey.

At common law, a judgment in partition vested the legal title without the execution of conveyances, but this was for the reason that the judgment merely vested in severalty the title which the parties already owned as tenants in common. In this State, even in a partition proceeding, a decree did not vest the title without deeds until a statute was passed giving to the decree such an effect.

We cannot resist the conclusion that this proceeding was conducted with too much haste, and without giving the parties interested in opposing it a proper opportunity to be heard. The bill was filed on August 31, 1888, and the final decree was entered on September 25, 1888. The sole defendant is a man over seventy two years of age, who is described by one of the witnesses as being "broken down both mentally and physically." Summons was served upon him on August 31, 1888. On Monday, September 10, 1888, being the first day of the September term of the Circuit court of Tazewell County, he was ruled to answer by Wednesday morning, September 12. On the last named morning the rule to answer was vacated, and leave was given to the complainants to amend their bill, and, at the same time, the defendant was ruled to answer the bill as amended by the coming in of court on the morning of Friday, September 14. On the fourth day of the term, which was Thursday, September 13, an order was entered, reciting that defendant had failed to comply with the rule to answer the amended bill and entering a default against him for failure to "answer under the rule." It thus appears, that default was entered against him before the expiration of the time within which the rule required him to answer. The record nowhere shows what the amendment to the bill was, or that any amendment was made to the bill. On September 25, the master of the court filed two depositions taken by him on behalf of the complainants on September 20, and, in his caption thereto, he states that they are taken in pursuance of an order entered on September 14 referring the cause to him to take proofs;

but, beyond this recital in the caption, we find nothing in the record to show that any such order of reference was entered.

The three living sons of the defendant, and his wife, and the administrator of the estate of Charles, are shown upon the face of the bill to be necessary parties. The decree does not stop with making a provision that its findings are subject to the rights of the persons above named, who are not made parties. It actually adjudicates upon those rights in the absence of such parties. The wife of the defendant was to have a home on the farm and be supported therefrom after her husband's death. The three brothers were each to have $200.00 after their father's death. They were thus interested in the subject matter of the suit, and were entitled to be heard in reference to such interests. The decree fails to give one of the brothers the $200.00 which, according to the allegations of the bill, was to be paid to him. As the decree is not binding upon him, he may choose to litigate the matter after his father's death, and, if he succeeds in establishing his right to the $200.00, the decree in this suit will have vested the title in the heirs of Charles without compliance with one of the preliminary conditions.

The complainants, in their bill and in their proofs, seem to claim that a money indebtedness from the plaintiff in error to his son Charles existed before the death of the latter. If so, such indebtedness passed to the administrator of the estate of Charles, and hence such administrator should have been made a party, especially as the case made by the defendants in error contemplates the application of such indebtedness towards the purchase of the farm. Section 111 of the Act in regard to the administration of estates (Starr & C. Stat. vol. 1, page 241) provides in certain cases, where a party has made a contract for the purchase of land and has died without completing it, that his administrator may complete the payment of the purchase money out of the personal property.

The complainants have introduced in evidence a written obligation entered into by plaintiff in error since the death of his son, Charles, in which the plaintiff in error agrees that in consideration of his son having lived and worked during his lifetime on the farm, there shall be paid out of plaintiff in error's estate at his death the sum of $2000.00 to his son's widow for her use and the use of her two children, and in which plaintiff in error further agrees to pay such widow for the support of herself and children interest at six per cent per annum on said sum annually, beginning on September 1, 1888. The written obligation thus referred to closes as follows: "I hereby enjoin on my heirs and administrators to make payment at my death as above as I am justly indebted to my deceased son and his widow in the sum of $2000.00."

Whatever may be the outcome of the present litigation as to the ownership of the farm, the defendants in error are entitled to be protected, in any event, to the extent of the obligation which the plaintiff in error himself thus admits.

The decree of the Circuit Court is reversed, and the cause is remanded to that court. *Decree reversed.*