# The National Fire Insurance Company of Hartford, Connecticut, v. Three States Lumber Company.

1. INSURANCE POLICY—*burden to establish cancellation of.* The burden to establish the cancellation of an insurance policy is upon the party alleging it.

2. INSURANCE POLICY—*when sole ownership clause of, not valid.* Held, that the particular contract, the terms of which are set forth in the opinion, did not establish a defense that the plaintiff was not, at the time of the issuance of the policy, the sole and unconditional owner of the property insured.

Action of assumpsit. Appeal from the Circuit Court of Alexander County; the Hon. W. W. BUTLER, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

MILES FREDERICK GILBERT, for appellant; GENERAL M. M. CRANE, of counsel.

LANSDEN & LEEK and DAVID S. LANSDEN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit on an insurance policy for $2,000 issued by appellant, July 5, 1902, on certain property claimed by appellee situated in Mississippi county, Arkansas, consisting of a saw mill building with engine and boiler house adjoining the same, together with the machinery, engines, boilers, etc., contained in said buildings. The property so insured was destroyed by fire on September 6, 1902, and afterwards suit was commenced upon the policy issued by appellant in the Circuit Court of Alexander county. Upon the trial a jury was waived and the court, having found in favor of appellee, entered judgment against appellant for $2,118.86 and costs of suit.

The policy contained the following among other provisions: "This policy shall be cancelled at any time, at the request of the insured or by the company, by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or

cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company, by giving notice, it shall retain only the pro rata premium;" and "this entire policy, unless otherwise provided by agreement, indorsed thereon or added thereto, shall be void if . . . the interest of the insured be other than unconditional and sole ownership."

Appellant's defense to the suit was, that there had been a cancellation of the policy prior to the time of the fire and that at the time the policy was taken out, appellee was not the unconditional and sole owner of the property insured and that the true facts concerning the ownership, were concealed from appellant. The proof showed that W. E. Smith, manager of appellee company, applied to John T. Brown, an insurance broker of Cairo, Illinois, to procure certain insurance on the saw mill buildings and machinery above mentioned; that Brown applied to D. A. Fisher, another insurance broker at Memphis, Tennessee, who procured the insurance from S. Doltroff, an insurance agent at Wynne, Arkansas. There were nine policies in all issued by nine different companies, among them being the policy issued by appellant, and the total amount of insurance was $14,500. The agent Doltroff testified on the trial that on August 5, 1902, he gave Fisher notice by mail of the cancellation of the policy issued by appellant and certain other companies, eight in all, and that on August 19, following, he sent another letter to Fisher calling his attention to the same matter; that these letters were both dictated by him to his daughter, who was his stenographer and typewriter. The daughter, Bettie Doltroff, testified that she wrote the letters at her father's dictation, copied them in the letter book, put them in stamped envelopes and mailed them to Mr. Fisher at Memphis, Tennessee, and that the letters were never returned to their office. What were claimed to be letter press copies of the letters in question, were admitted and read in evidence. The letter;

Nat. Fire Ins. Co. v. Three States Lumber Co.

of August 5 purported to inform Mr. Fisher that the companies had requested the cancellation of certain policies, naming the one issued by appellant among others, and he was asked to cancel and return the same to the writer as soon as possible, and to consider the letter as official notice of such cancellation. The letter of August 19 stated that companies refused to write insurance for appellee on account of the rate and poor condition of the plant, and asked Fisher to get the policies called for in the notice of cancellation. Miss Doltroff further testified that in the letter of August 19 she enclosed the cancellation notices for appellee. Appellant also read in evidence certain stubs of cancellation notices, from a book kept by Doltroff, one of which purported to show that the policy issued by appellant was ordered cancelled August 5, 1902, and the notice served August 19, 1902. On the other hand Fisher testified that he never received any notice of any kind by letter or otherwise from Mr. Doltroff or any one connected with the companies, of the cancellation of the policy in question, prior to the fire; that his office had communication by telephone with Doltroff's office and that about the 18th or 19th of August he placed with Doltroff and the latter accepted $5,500 insurance on this same property; that he talked with Doltroff personally at that date with reference to the new policies and he promised to forward them by the next mail; that he did not do so and there were various other conversations over the telephone in reference to the matter, but that at no time did Doltroff notify witness or intimate to him his intention or desire to cancel any policies whatever in force at that time. Mr. Kelley, the chief clerk of Fisher, testified he opened all correspondence which came to the office in reference to fire insurance in the absence of Mr. Fisher and that he had no knowledge of the receipt at Mr. Fisher's office, by any one of a letter from Doltroff, or any notice of any kind from him about the matter of the cancellation of the policies on appellee's property at any time prior to the fire. The proof shows that neither Brown the broker at Cairo nor Smith the

manager of the company, received any notice of the cancellation of the policy issued by appellant and that they did not know any one claimed that the policy had been cancelled until after the fire; also that Mr. Smith first ascertained that the policies had been obtained through Mr. Fisher, a short time after the burning of the property.

The burden was upon appellant to show that a cancellation of the policy had been requested or that the company had given five days' notice of such cancellation as provided for by the policy.   The court below must have found that the contention of appellant as to the cancellation of the policies was not sustained by the proofs and with that finding we fully agree.

The defense that appellee was not possessed of the unconditional and sole ownership of the property in question at the time the insurance was taken out on it, was based upon a contract in writing entered into between appellee and A. B. Wolverton, on December 17, 1898.   By said contract Wolverton agreed to manufacture into lumber, for appellee, its successors or assigns, all the merchantable timber on certain lands in Mississippi county, Arkansas, which appellee was said to be the owner and in possession of, and deliver the same to appellee; that Wolverton should at all times follow the directions and instructions of the company in cutting said timber and manufacturing lumber and it was particularly understood and agreed that the title to all land and timber described in the contract, was and should remain in the company, and the title and possession of all lumber manufactured under the agreement, should remain in the company, free from all liens, claims, demands and incumbrances of any nature whatsoever; that the company should purchase a saw mill and other equipment to be used by Wolverton in manufacturing and delivering the merchantable timber; that the title and possession of all such property and material should remain in the company and be by it entered upon its books, under the name of "Wolverton Lumber Account;" that the company

might sell any parcel or parcels of land from which the merchantable timber should have been removed and the proceeds of such sale should be entered upon the books to the credit of said "Wolverton Lumber Account;" that said company should make monthly advances for the payment of labor and operating expenses not exceeding $5 per thousand feet; that if Wolverton, in case of death, disability or otherwise, should fail or neglect to comply with the terms of the agreement, the company might upon written or verbal notice, to him or his legal representatives, enter upon and take possession of all improvements and make other arrangements for the cutting and manufacturing of said timber, and that under said circumstances Wolverton or his legal representatives would relinquish all claims they might have under the contract, except as to manufactured lumber then in the mill yard; that all lumber manufactured and delivered by Wolverton be placed to the credit of "Wolverton Lumber Account," the prices to be afterwards agreed upon; that the company would buy from time to time additional timber with the consent of Wolverton to be manufactured by the latter and delivered to the company, under the same contract; that when the terms of the contract should have been fully complied with and all the merchantable timber described in the contract, manufactured and delivered to the company, as agreed upon, together with any additional timber that may have been purchased under the contract, the company would quitclaim to Wolverton all land remaining unsold under the contract and give him the title to all improvements and personal property that had been purchased by it and remained upon the land, provided there was upon the books to the credit of "Wolverton Lumber Account," a sufficient sum to pay for all land, timber, personal property and improvements at the cost of same, together with all expenses, interest, taxes and assessments thereon; and further provided, that such credit should be first applied on a certain indebtedness owing from Wolverton to the company and the balance applied on the contract, if sufficient re-

mained to balance the account, otherwise to be held by the company and applied *pro rata* as it might elect under the terms of the agreement.

Appellant contends that by reason of this agreement with Wolverton the interest of appellee in the property insured at the time the insurance was taken out, was other than the unconditional and sole ownership; that by said agreement the property insured and the ground on which it was situated, became encumbered and charged with certain burdens; that there was in fact a conditional sale to Wolverton whereby, on the performance of the conditions of the contract, he was to have title to the premises. Can the technical objection raised by appellant be availed of to defeat the insurance policy issued to it by appellee upon the property in question?

In German Insurance Company v. Gibe, 162 Ill. 251, where the question of sole and unconditional ownership and change in title or possession of property was under consideration, it was said by our Supreme Court: "Courts never look with favor upon forfeitures and will only give effect to them where there is a clear right shown." And this court said in the case of Fire Association of Philadelphia v. Short, 100 Ill. App. 553: "Insurance companies write and sign their policies. Where there are doubtful constructions, they must be held against the insurer. Policies of insurance must be liberally construed in favor of the insured so as not to defeat without a plain necessity, his claim for indemnity."

It appears from the contract between appellee and Wolverton that at the time it was entered into, appellee was the owner and in possession of the lands in question, and that it was further specifically agreed to that the title to the land should remain in the company free from all liens, claims, demands and encumbrances of every kind whatever, and that the title and possession of the saw mill and the equipment necessary for carrying on the business of manufacturing and delivering the merchantable timber described, should remain in the company. By the strict

·letter of the contract, therefore, appellee was the sole and unconditional owner of the property covered by the policy. Whether Wolverton would ever have any interest in any of the property was problematical and depended upon his completion of the contract, which the evidence showed must necessarily extend over a number of years, and whether any land remained unsold after enough had been disposed of to extinguish his former debt and to pay the original cost of the land, timber, personal property and improvements, together with all expenses, interest, taxes and assessments thereon.    It does not appear from the contract that in making sales of the land Wolverton was to be consulted in any way, but the plain provision of the contract was that such sales might be made by appellee, its successors and assigns.    The conditions differ from those existing where a bond for a deed has been made, in which case there is usually a recital of the sale of the property, but it was held in Phenix Ins. Co. v. Caldwell, 187 Ill. 73, that even the execution and delivery of a bond for a deed did not constitute a sale within the meaning of that provision of an insurance policy, which declared that, "if the property be sold or transferred in whole or in part . . . or any change takes place in title or possession . . . whether by . . . voluntary transfer, assignment or conveyance, or if the title or possession be changed from any cause whatsoever . . . this policy shall in each and every instance be void."    The contract in question did not purport to sell any land to Wolverton but only proposed to convey him such premises and to give title to such improvements and personal property, as remained after the contract had been completed and enough of the real estate sold to pay the indebtedness named.    Not only did appellee retain the legal title to the land but Wolverton did not even have an equitable title.

In Chappell v. McKnight, 108 Ill. 570, it is said: "A mere contract or covenant to convey at a future time on the purchaser performing certain acts, does not create an equitable title.    It is but an agreement that may

ripen into an equitable title. When the purchaser performs. all acts necessary to entitle him to a deed, then and not till then he has an equitable title and may compel conveyance." This doctrine is cited approvingly in Walters v. Walters, 132 Ill. 467, and Phenix Ins. Co. v. Caldwell, *supra.*

We conclude that the existence of the contract between appellee and Wolverton did not render the interest of the appellee in the property insured, other than that of unconditional and sole ownership.

The policy also contained a provision that it should be void if the insured had concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein. The only charge of concealment or misstatement is that the company was not informed by appellee of the existence of the Wolverton contract, at the time the policy was issued. As we have found, however, that appellee's unconditional and sole ownership of the property in question was not affected within the meaning of the policy by the contract, it follows that any failure, if there was one, to mention it at the time the insurance was taken out, was immaterial and also that there was no misstatement in the policy as to the interest of the insured in the property. It is not shown by the proofs, nor does it appear to us, that the moral hazard was increased by the Wolverton contract, or that appellant was in any way injured by its existence. The loss was shown to have been an honest one and it is not claimed that any fraud was practiced upon appellant.

The judgment of the court below in favor of appellee is therefore affirmed.

*Affirmed.*